LOS ANGELES AIRWAYS, INC., a California Corporation, Appellant, *v.* THE ESTATE OF HOWARD R. HUGHES; WILLIAM LUMMIS and FIRST NATIONAL BANK OF NEVADA, Co-special Administrators of the Estate of HOWARD R. HUGHES, DECEASED, Respondents.

No. 11130

March 10, 1983                                                659 P.2d 871

*Murphy, Thornton, Hinerfeld & Cahill,* Los Angeles, and *Richard D. Weisbart,* Las Vegas, for Appellant.

*Morse-Foley,* Las Vegas, for Respondents.

## OPINION

By the Court, ZENOFF, SR. J.:[1]

Appellant, Los Angeles Airways, Inc. (hereinafter "LAA"), filed a lawsuit in district court against respondents (hereinafter the "Hughes interests") for fraud and breach of contract. The Hughes interests moved for, and obtained, summary judgment, and this appeal followed.

The events giving rise to this lawsuit occurred in Nevada in the years 1968 through 1970, and the applicable statutes of limitations for both the tort and contract causes of action embodied in the lawsuit had begun to run by September 30, 1970. Howard Hughes left Nevada in November, 1970, and apparently spent the rest of his life elsewhere. He died in April, 1976. LAA filed the lawsuit on May 31, 1977.

Summary judgment was granted on the ground that the applicable statutes of limitations had run.[2] The district court also found that the statutory limitations periods were not tolled under NRS 11.300[3] during Howard Hughes' absence from Nevada, and therefore lapsed before LAA filed its lawsuit

---

[1]The Chief Justice assigned THE HONORABLE DAVID ZENOFF, Senior Justice, to participate in this case. Nev. Const., art. 6, § 19(1)(c), SCR 10.

[2]Under NRS 11.190(2)(c) and NRS 11.190(3)(d), the limitations periods applicable to the contract and fraud causes of action are 4 years and 3 years, respectively.

[3]NRS 11.300 provides:

> If, when the cause of action shall accrue against a person, he be out of the state, the action may be commenced within the time herein limited after his return to the state; and if after the cause of action shall have accrued he depart the state, the time of his absence shall not be part of the time prescribed for the commencement of the action.

against the Hughes interests. LAA's sole contention on appeal is that the trial court's determination in this regard was incorrect. We agree, and therefore reverse and remand.

We have previously held that where a defendant is absent from the state, and there is a genuine issue of fact as to his amenability to service of process, summary judgment is precluded, and the tolling provision of NRS 11.300 may become operative. *See* Bank of Nevada v. Friedman, 82 Nev. 417, 420 P.2d 1 (1966). It has already been noted that in the matter before us, Howard Hughes was absent from this state after November, 1970. Additionally, the evidence submitted by LAA in opposition to the motion for summary judgment was sufficient to create an issue of fact as to Howard Hughes' amenability to service of process. Indeed, the record indicates that Howard Hughes purposefully arranged his living situation to avoid being served with process. Although he apparently resided at various hotels in North America and Europe after he left Nevada, Hughes ordinarily was not listed as a resident or guest at these hotels. Moreover, through numerous security measures, intruders such as process servers were prevented from seeing Howard Hughes or entering his quarters, and Hughes' aides were instructed to refuse to accept registered or certified mail.

We recognize that in recent years, the continued viability of the tolling statute has been called into question in light of the enactment of statutes making it possible to obtain jurisdiction over defendants residing outside this state. Indeed, in granting summary judgment the district court expressed the view that the enactment of NRS 14.065,[4] the so-called "long-arm" statute, rendered the tolling statute virtually inapplicable. Nevertheless, we note that in the number of years since the enactment of NRS 14.065 and similar provisions, the legislature has not repealed the tolling provision, and we are reluctant to do so by judicial declaration. *See* Duke University v. Chestnut, 221 S.E.2d 895 (N.C.Ct.App. 1976).

The judgment is reversed and remanded.

SPRINGER and GUNDERSON, JJ., concur.

---

[4]NRS 14.065 provides in pertinent part:

. . .

2. Any person who, in person or through an agent or instrumentality, does any of the acts enumerated in this subsection thereby submits himself and, if an individual, his personal representative to the jurisdiction of the courts of this state as to any cause of action which arises from the doing of such acts:

(a) Transacting any business or negotiating any commercial paper within this state;

(b) Committing a tortious act within this state . . .

BRENNAN, D. J., dissenting, with whom MANOUKIAN, C. J., joins:

The majority has found NRS 11.300[1] applicable to the instant case. I cannot agree. That statute applies when a party leaves the state and thereafter returns, with the time that the party is out of state excluded for the purpose of computing time regarding the statute of limitations. Here, we do not have a defendant who has returned to the state. Further, there is a statute governing personal service of process on a party who, as here, is outside the state, thus NRS 11.300 would not apply.

Rather, for purposes of this cause of action, the applicable statute is NRS 14.065,[2] the so-called "Long Arm Statute." This statute would allow for the personal service of process

[1]NRS 11.300 provides:

If, when the cause of action shall accrue against a person, he be out of the state, the action may be commenced within the time herein limited after his return to the state; and if after the cause of action shall have accrued he depart the state, the time of his absence shall not be part of the time prescribed for the commencement of the action.

[2]NRS 14.065 provides:

1. Personal service of summons upon a party outside this state is sufficient to confer upon a court of this state jurisdiction of the person of the party so served if:

(a) Such service is made by delivering a copy of the summons, together with a copy of the complaint, to the party served in the manner provided by statute or rule of court for service upon a person of like kind within this state; and

(b) Such party has submitted himself to the jurisdiction of the courts of this state in a manner provided by this section.

2. Any person who, in person or through an agent or instrumentality, does any of the acts enumerated in this subsection thereby submits himself and, if an individual, his personal representative to the jurisdiction of the courts of this state as to any cause of action which arises from the doing of such acts:

(a) Transacting any business or negotiating any commercial paper within the state;

(b) Committing a tortious act within this state;

(c) Owning, using or possessing any real property situated in this state;

(d) Contracting to insure any person, property or risk located within this state at the time of contracting; or

(e) Living in the marital relationship within this state notwithstanding subsequent departure from this state, as to all obligations arising for alimony, child support or property settlement, if the other party to the marital relationship continues to reside in this state.

3. Only causes of action arising from these enumerated acts may be asserted against a defendant in an action in which jurisdiction over him is based on this section.

4. The method of service provided in this section is cumulative, and may be utilized with, after or independently of other methods of service.

upon a party outside this state provided there is a showing that that party transacted business or negotiated commercial paper within this state. Such has been demonstrated here. Indeed, the plaintiff-appellant has alleged in its complaint that the defendant-respondent had such contact with the State of Nevada.

Therefore, appellant should have relied upon NRS 14.065(2)(a) and attempted personal service upon respondent outside the state.

Instead, the majority has discussed the defendant's unamenability to the service of process and hypothesized that, if the defendant is unamenable to service, there need not be an attempt of service in this case.

The majority has further speculated that if the plaintiff would have filed a cause of action within the statutory period (it did not) and attempted service upon the defendant (it did not), that the defendant would have refused service. This speculation undermines the defendant's constitutional privilege of due process and should not be allowed. The very essence of due process is timely notice of any cause of action which could result in loss of freedom or property.

In addition to a due process requirement that there be a reasonable relationship between the defendant and the state seeking to exercise jurisdiction over him, there is also a due process requirement that a *reasonable method be used to notify the defendant* of a pending lawsuit so that he may have an opportunity to be heard.

This due process requirement of notice would be fulfilled by filing a lawsuit and making a diligent effort to serve the defendant. This requirement was not met here, where appellant (1) failed to file a complaint until nearly seven years after the cause of action accrued, until after the statute of limitations had run, and until after Hughes' death; (2) never attempted to serve Hughes while he was alive; and (3) offered proof of "unamenability to service" as the reason for failing to have done anything sooner.

How is a defendant to oppose a plaintiff's claim that defendant could not have been served, when plaintiff did not even attempt service during defendant's lifetime? The plaintiff, not the defendant, has the right to assert or not to assert its cause of action. It is not the obligation of a defendant to insist that the plaintiff sue him timely since a defendant has no control over what a plaintiff chooses to do or not to do with its cause of action. Rather than a defendant saying, "sue me timely," it is the statute of limitations that speaks for him.

Whether it be plaintiff's neglect, forgiveness of a defendant's obligation, or for a host of other reasons that a plaintiff permits the running of a statute of limitations, the true reason the

plaintiff allowed the statute of limitations to bar his claim is known only to him during the period of time within which he could have asserted his cause of action, and his self-serving declarations as to why he failed to file his cause of action within the statutory period of time should not be allowed to overcome not only a defendant's constitutional rights but also the limitations of action statutes of the State of Nevada.

The majority has further found Bank of Nevada v. Friedman, 82 Nev. 417, 420 P.2d 1 (1966), to be controlling for the proposition that the plaintiff has a right to trial regarding the tolling issue whenever there is a dispute of fact whether the defendant had been amenable to service of process during the limitation period.

In ruling that the appellant's cause of action was barred by the statute of limitations and not tolled by NRS 11.300 and citing *Friedman,* this court held in Blotzke v. Christmas Tree, Inc., 88 Nev. 449, 449 P.2d 647 (1972):

> The non-resident contractor Beck was continuously engaged in business in Nevada and amenable to both personal service of process and to substituted service thereof by reason of the "minimum contacts" he had established with this state. [Citations omitted.] His absence from the state is immaterial in these circumstances since he was continuously liable to service of process.

*Id.* at 450.

*Friedman* does not apply to the facts of the instant case. There can be no question in the case before us that Hughes was continuously liable to service under the "Long Arm Statute" of NRS 14.065. How can the plaintiff be permitted to raise an issue of fact as to whether Howard Hughes was amenable to service, when plaintiff made no effort to effectuate service?

In a case such as this, where the plaintiff's causes of action are included within the parameters of NRS 14.065 and the majority desires a factual showing as to the party's unamenability to service of process, it would seem more judicious to require that the plaintiff file suit and attempt service of process under NRS 14.065. Later, prior to dismissal for want of prosecution under NRCP 41(e), plaintiff could dismiss the suit without prejudice upon proof of unamenability of the defendant to service. A plaintiff should not be allowed to sit on its cause of action until a defendant dies and then have an evidentiary hearing to prove that the defendant would not have accepted service of process even if service had been sought.

When it comes to concluding as a matter of law that because a party has on prior occasions evaded service of process or has

not been amenable thereto and, therefore, he would do likewise on all future lawsuits, I believe that one does not know if a person is amenable to service of process on any particular case until the suit is filed and service attempted. To deny a party his constitutional right to notice of a suit against him and his right to marshall his evidence and defenses in a timely manner, denies him his due process right to notice.

The trial court's decision should be affirmed.[3]

---

[3]The Governor designated the Honorable James A. Brennan, Judge of the Eighth Judicial District Court, to sit in the place of The Honorable John C. Mowbray, Justice, who voluntarily disqualified himself. Nev. Const., art. 6, § 4.